**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL NO. 3:10CV630-GCM-DSC**

| | |
|---|---|
| ANITRA BOSTIC, ) Plaintiff, ) ) vs. ) ) MICHAEL J. ASTRUE, ) Commissioner of Social ) Security Administration, ) Defendant. ) ) | **MEMORANDUM AND RECOMMENDATION AND ORDER** |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Judgment on the Pleadings" (document #11) and "Memorandum in Support ..." (document #12), both filed May 18, 2011; and Defendant's "Motion for Summary Judgment" (document #13) and "Memorandum in Support..." (document #14) filed April 22, 2011. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and these Motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Judgment on the Pleadings be denied; that Defendant's Motion for Summary Judgment be granted; and that the Commissioner's decision be affirmed.

**I. PROCEDURAL HISTORY**

Plaintiff filed her application for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI") on November 8, 2007, alleging that she became disabled on September 18, 2007. Plaintiff's application was denied initially and on reconsideration, and a hearing was held on June 29, 2009 (Tr. 23-59).

On January 4, 2010, the Administrative Law Judge ("ALJ") issued a decision denying Plaintiff benefits. (Tr.6-20). In his decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. The ALJ also found that Plaintiff suffered "left foot impairments status post surgeries, status post right hip replacement, right shoulder impairment and an affective disorder" (Tr. 11), which were severe impairments within the meaning of the regulations, but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC")[1] to perform unskilled light[2] work in a non-production setting with a sit/stand option on an occasional basis and requiring no more than occasional climbing, balancing, stooping, crouching, kneeling and crawling; no concentrated exposure to hazards such as moving machinery or unprotected heights; and no more than frequent reaching of the the right upper extremity. The ALJ then concluded that Plaintiff could not perform any of her past relevant work.

The ALJ then shifted the burden to Defendant to show the existence of other jobs in the national economy that Plaintiff could have performed. The ALJ took testimony from a Vocational Expert ("V.E.") whose testimony was based on a hypothetical that factored in the above limitations. The ALJ relied on the VE's testimony in concluding that Plaintiff was capable of performing other

---

[1] The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[2] "Light" work is defined in 20 C.F.R. § 404.1567(b) as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

jobs existing in significant numbers in the national economy (Tr. 19-20), and that she was not disabled during the relevant period (Tr. 20).

By notice dated October 14, 2010, the Appeals Council denied Plaintiff's request for further administrative review.

Plaintiff filed the present action on December 10, 2010, and assigns error to the ALJ's evaluation of the opinions of two of her treating physicians at Gaston Family Health Services, Dr. Fatima Brens and Dr. Aregai Girmay, and to the ALJ's evaluation of her subjective complaints of pain in formulating her RFC. See Plaintiff's "Memorandum in Support ..." at 9-13 (document #12). The parties' cross dispositive Motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971), and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION OF CLAIM

The question before the ALJ was whether the Plaintiff became "disabled" at any time, as that term of art is defined for Social Security purposes.[3] Plaintiff's first assignment of error concerns the ALJ's evaluation of Dr. Brens' and Dr. Girmay's opinions.[4] The Fourth Circuit has

---

[3] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

[4] Plaintiff argues that the ALJ failed to consider Dr. Brens' opinion and otherwise makes no mention of that opinion in her brief. (Pl's. Mem. 9). Dr. Brens' opinion is found at Exhibit 25F (Tr. 379), and is referenced by the ALJ in his discussion of the opinion evidence (Tr. 18). The ALJ's reference to the "opinions"—plural—from Dr. Girmay suggests that the ALJ mistook the questionnaire completed by Dr. Brens as one prepared by Dr. Girmay.

4

held that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of the alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178, citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). "An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies' or has not given good reason for the weight afforded a particular opinion." Christian v. Apfel, No. 98-1673, 168 F.3d 481, 1998 WL 911720, at *2 (4th Cir. Dec. 31, 1998) (per curiam, unpublished) (quoting Scivally v. Sullivan, 966 F.2d 1070, 1076-77 (7th Cir. 1992)) (internal citation omitted).

On May 2, 2008, Dr. Girmay opined that Plaintiff was disabled due to severe osteoarthritis localized in her right hip and that she could not lift more than 5 pounds, stand for more than 10 minutes or walk for more than 200 yards. (Tr 314).

On May 19, 2009, Dr. Brens completed a questionnaire sent by Plaintiff's attorney. Dr. Brens opined that Ms. Bostic was disabled due to severe osteoarthritis in her right hip, left foot and right shoulder. (Tr 379). She determined that Plaintiff could not lift more than 5 pounds with her right hand, stand for more than one hour during the day or walk for more than 200 yards. Dr. Brens

---

The questionnaires assess nearly identical findings. Compare Tr. 314 with Tr. 379.

5

recommended an orthopaedic evaluation to assess the duration of these limitations. Id.

In assessing Plaintiff's physical RFC, the ALJ afforded significant weight to the opinion of her treating orthopedist, Dr. H. Clayton Thomason, III. (Tr. 18). On April 29, 2008, three days before Dr. Girmay gave his opinion, Dr. Thomason opined that as a result of Plaintiff's foot and hip impairments, "she is not a candidate for any labor intensive type job that requires a significant amount of lifting or bending or squatting or walking" (Tr. 313). In relying on this opinion, the ALJ explained,

> As a specialist in orthopedics Dr. Thomason's medical opinion on the issue of the nature and severity of the claimant's impairment is entitled to special significance especially when, as it is in this case, it is supported by objective medical evidence and it is consistent with other substantial evidence of record. Accordingly, I have given his opinion great weight. His conclusions are consistent with the [RFC] above....

(Tr. 18). The assessed RFC does not require Plaintiff to perform any significant amount of walking, lifting, bending or squatting (Tr. 14, Finding 5). The ALJ limits Plaintiff to only occasional bending and squatting, and light-level walking and lifting. Id.

The ALJ afforded little weight to the opinions of Dr. Girmay and Dr. Brens (Tr. 18). The ALJ stated,

> I have considered the medical opinions of the claimant's primary care physician, Dr. Aregai Girmay and I have given his opinions little weight. In finding that the claimant's right hip degenerative joint disease, left foot and right shoulder impairments are "severe" impairments, I have given significant weight to the medical opinion of Dr. Girmay. However, I have given little weight to his disability statements because it is inconsistent with the other evidence of record. Dr. Girmay concluded that the claimant is not able to lift more that five pounds; not able to stand more than 10 minutes; and can not walk for more than 200 yards but he provided no objective clinical evidence to support his opinions such as, functional capacity examination reports, range of motion study results or other objective clinical evidence (Exhibits 17F; 25F). Dr. Girmay's opinion is without substantial support from the other medical evidence in the claimant's records as well, which obviously renders it less persuasive in light of the fact that none of the specialists in orthopedics recommended such restrictions.

(Tr. 18). The ALJ afforded little weight to those opinions because they were unsupported by and inconsistent with the evidence of record.

Accordingly, because the ALJ relied upon permissible reasons in rejecting Dr. Brens' and Dr. Girmay's opinions, Plaintiff's assignment of error should be overruled. See Craig, 76 F.3d at 590; Mastro, 270 F.3d at 178.

Plaintiff next argues that the ALJ erred in formulating her RFC by improperly discounting her subjective complaints of pain. The undersigned finds that, to the contrary, the RFC assessed by the ALJ and his treatment of Plaintiff's subjective complaints are supported by substantial evidence.

At the hearing stage, the ALJ is solely responsible for determining Plaintiff's RFC, and must consider the functional limitations resulting from Plaintiff's medically determinable impairments. 20 C.F.R. § 404.1546(c); SSR 96-8p. The determination of whether a person is disabled by nonexertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996), citing 20 C.F.R. § 416.929(b); and § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to

7

alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The record contains evidence of Plaintiff's left foot impairments status post surgeries, status post right hip replacement, right shoulder impairment and an affective disorder – which <u>could</u> be expected to produce some of the symptoms claimed by Plaintiff. Accordingly, the ALJ found that Plaintiff had met the first prong of the test. The ALJ then properly determined that Plaintiff's subjective complaints were not fully credible, as they were not consistent with the objective evidence in the record. (Tr. 11,15-18).

Plaintiff argues that the ALJ failed to consider the fact that she received some assistance from her mother. But the ALJ did consider this testimony, as follows:

> Several of the claimant's assertions during her testimony strongly suggest that she has exaggerated her symptoms and limitations . . . she testified that there are days when her pain , especially her back pain, is so severe that she is unable to get out of bed. Here again, the paucity of the medical evidence does not support the claimant's allegations of such severe symptoms. In addition, she lives alone in an apartment with her seven year old daughter with whom she is clearly devoted <u>and for the most part, is solely responsible for her care</u>. The claimant's ability to maintain her household in addition to the significant responsibilities of a single parent reflects a significant functional capacity and not an individual unable to sustain regular and continuing work due to medically determinable impairments.

(Tr. 17-18) (emphasis added). The ALJ recognized that Plaintiff had some help, but simply could not reconcile Plaintiff's complaints of total disability with the fact that she was her daughter's primary care-giver and bore primary responsibility for maintaining her home. "The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life." Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994). On this point, the ALJ reasonably found that evidence of Plaintiff's daily activities, which included caring for her child, driving, attending church for an hour and a half, visiting relatives and doing light shopping, was inconsistent with her

8

allegations of totally disabling pain. See Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (holding that a claimant's daily activities, such as performing home exercises, taking care of the family pets, cooking, and doing laundry, were inconsistent with the claimant's complaints of excruciating pain and inability to perform basic physical and mental work abilities).

The ALJ also drew a permissible inference from the minimal evidence pertaining to Plaintiff's right shoulder impairment. The ALJ stated that:

> [Plaintiff] testified that she can barely use her right arm and that whenever she goes grocery shopping she must use her left hand to lift and carry even so much as a gallon of milk. It is difficult to attribute that degree of limitation to the claimant's medical condition in view of the paucity of medical evidence attributed to her right shoulder impairment .

(Tr. 17). See Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983) (noting that "[t]he [Commissioner] is entitled to rely not only on what the record says, but also on what it does not say."). The ALJ's inference is reasonable.

The ALJ also explained—through citation to specific evidence of record—that Plaintiff's allegations of total disability were not supported by her physical therapy records, which documented significant improvement and reduction of pain (Tr. 16). The ALJ stated that:

> the claimant's eight weeks of physical therapy following her hip surgery resulted in an improvement in the active/passive range of motion for the right hip flexion and abduction to within normal limits for her age, and a decrease in her degree of pain to 0-4/10 so that she was capable of performing her necessary activities of daily living and was able to ambulate more effectively. The claimant's physical therapy progress report dated September 15, 2008 showed that she rated her pain 3/10 where 10 was the worse pain, and she reported 85% improvement overall. Moreover, the claimant's treating physician, Dr. H. Clayton Thomason appeared to be so pleased with her progress at the follow-up appointment in September 2008 that he indicated in his medical notes that he would not need to see her again until June 2009. Overall, the course of medical treatment in this case does not bolster the claimant's credibility with respect to the degree of her hip pain and other subjective complaints.

Id. The ALJ was aware that Plaintiff continued to suffer from pain and functional limitations after

9

undergoing physical therapy, but found that the treatment notes were consistent with improvement in those areas.

Although the medical records establish that the Plaintiff experienced symptoms and mental and emotional difficulties to some extent or degree, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976). Moreover, the facts found by the ALJ clearly support the ultimate conclusion that Plaintiff suffered from her combination of impairments, but was not disabled.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles v. Shalala, 29 F.3d 918, 923 (4th Cir. 1994)(citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the medical records, Plaintiff's RFC and his ultimate determination that Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Judgment on the Pleadings" (document #11) be **DENIED**; that Defendant's "Motion for Summary Judgment" (document #13) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED**.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections

to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Graham C. Mullen.

**SO RECOMMENDED AND ORDERED**.

Signed: July 21, 2011

David S. Cayer
United States Magistrate Judge